The first case listed this afternoon is B&G Construction vs. Director Of Workers Comp Dept Of Labor, Ms. Wise. Thank you, your honors, and good afternoon. My name is Megan Wise and I represent B&G Construction employers as well as the State Workers Insurance Fund. I presume that you're all familiar with the facts so go right into the argument if that's all right with the court. Do you wish to reserve a minute? I do, I'm sorry, I missed two minutes but it's what we're about. Great. Although B&G believes that the 2010 amendments to the Black Man Benefits Act is an unconstitutional denial of due process and an unconstitutional taking, to the extent it resurrects the irrevocable presumption in 132L, we believe that this honorable court can find another basis in favor of the employer without enriching the constitutional issues. And it's that issue that I'm going to primarily address to the court. In Section 932C of the Act, in terms of which benefits are set forth, the next section provides, benefits should be payable during such period by each such operator under this section of the category as a person who is entitled to benefits. Under Section 922A, this title. Then you go to Section 922A, which is actually the benefit payment schedule section but it lists the categories of persons who are entitled to benefits. It provides a number of different categories. In this particular case, the one that is of interest is 922A2, which provides that in the case of a death of a minor due to pneumoconiosis or, and there's exception language here, except with respect to a claim filed under Part C of this subchapter on or after the effective date of the Black Man Amendments, Benefit Amendments of 1981. Of a minor receiving benefits under this part, benefits shall be paid to his widow if any at the rate of the deceased minor would receive such benefits if he were totally disabled. Now this exception language here appears throughout many provisions of the Blackbone Act and was added in 1982 in response to a number of liberalizing presumptions and other provisions within the Act that had been introduced actually to the administrative backlog in 72 and 78. In 1978 was the year that 932L, which is the provision and addition in this case, was added. You're relying on the language in 922A2 that says a death due to pneumoconiosis? Yes, Your Honor. It says that the claim would have to prove that. In this case, it would have to prove that. Because how do you reconcile that with the 2010 amendments? Or can you? Yes, I believe you can. The 2010 amendment actually struck out the exception language so it's back to where it was when it was first enacted. But I think that you can reconcile the two because of 921C3, which is the irrebuttable presumption of death due to complicated pneumoconiosis, which is actually an irrebuttable presumption. Unlike the other ones in 921C1, 2, 4, and 5, those are all rebuttable. This 921C3 is irrebuttable. If there's a finding, a diagnosis, or an autopsy of complicated pneumoconiosis, which is the worst kind of pneumoconiosis, the most severe and most often terminal, then you are automatically entitled to benefits through the violation of that presumption. So I think that bridges the gap between 932L. So you're saying 932L would only apply in the case of somebody who has complicated pneumoconiosis? I believe that's right, Your Honor. But it also lends some rationality to 932L remaining in statute because there is indeed a way to be an eligible survivor under 932L through Operation 921C3. Now, a question would arise, perhaps, but what would be the effect of the ruling on Mrs. Campbell's claim, for instance, as well as other claims pending or having already been decided under amended 932L? I think the ramifications of such a ruling from this Court would be that survivors are not entitled to benefits without causation, because, again, 932C and 922A2, survivors are not entitled to benefits unless they have proven that the pneumoconiosis was, in fact, the cause of death. Additionally, 921A is the section that talks about and empowers the secretary to pay out benefits. And under 921A, the secretary is not permitted to do that unless there is proof that the minor died of pneumoconiosis. That's even more proof. So under this statutory scheme, the survivors are not permitted to recover an automatic continuation of benefits unless they can prove that pneumoconiosis was the cause of death. And one way you can become an eligible survivor under 932L is through the operation of the 921C3 irrevocable presumption of death from pneumoconiosis when there's been either a diagnosis or an autopsy of complicated pneumoconiosis. So what would the effect be? With respect to Mrs. Campbell's claim, Mrs. Campbell is not an eligible survivor to benefits unless she can establish that her husband's death was due to pneumoconiosis. She was unsuccessful in her attempt at doing this before the Administrative Law Court when the case went up to the Board of Review. While the merits were briefed, while they were pending the amendment to the Black Line Benefits Act through the Patient Protective and Affordable Care Act, it went into effect on March 23, 2010. So the Board of Review asked that the parties brief the ramifications of that on this particular case. So the Board never reached the merits of the case. So if they agree with you, would you remain to the Board? I believe that the court would do in this particular instance, Charlie, would be to remain Mrs. Campbell's claim back to the Board of Review so that it can address the substance of her case. Doesn't that tantamount to her losing, though? I mean, on the merits, they ruled against her a couple of times, and then only based upon what the Board perceived to be the statutory change caused her to prevail the last time. Well, I believe that the Board of Review is entitled to look at the evidence on you, and it may well find that, in fact, contrary to what the Administrative Law Judge found, that she did, in fact, believe that her husband's death was due to neoconiosis. That's for the Board to decide, I believe. Okay, that's right. So the prior decisions in the match were the ALJ's decisions, not the Board's. That's right, Your Honor. Okay. If they're claims pending, or if the issue hasn't been decided, I believe that the Board from this court would mandate that the survivors be required to prove that the neoconiosis was caused, that their death was caused by neoconiosis. A stickier issue, I think, would be what about claims that have already been decided? From what I understand, the Board has been deciding the law of these cases, and just saying 932 ALJ entitled to benefits. We provided with a written decision that rejected your position on the question of 922A2. Are you referring to the Fairman? Yes, Your Honor. Yes, Your Honor. The Director did say to that case, and then we'll be permitted to address it. Of course, the Board of Directors' decisions are not authoritative for this court. But also, more importantly, in that case, the Board had stipulated that the claimant was an eligible survivor. So that issue wasn't even before the court, whereas in this case, that is the central disputed issue right now to be decided by this court. If it was stipulated, why did the Board address it at page 4, the full paragraph in the middle of the page on page 4? Why was it addressed then if it was already a conceded point? I venture to guess that it was simply speculation and dictum, Your Honor, because it didn't say in full that they had... Well, I mean, it says we further reject employers' assertion that amended section 932L is rendered unenforceable. So that doesn't sound like it was conceded. Where can you point to us evidence that it was a conceded point? Well, I don't think that 932L is ineffective. I just think that its interpretation is somewhat different from what the Board has said in the experiment and also what the Directors are asserting now. I don't think it's ineffective as amended. I think that it still does allow for a claimant to proceed upon the death of a loved one if there is an autopsy that shows that death was due to complicated pneumoconiosis. If there's an autopsy due to complicated pneumoconiosis, then it's an irrebuttable presumption they've written.  As I understand your argument now, you're saying when it's not complicated pneumoconiosis, they still have the opportunity to prove they're eligible survivors, but they must do that by showing that their loved one's demise was caused by pneumoconiosis. That's correct, Your Honor. You're saying that if it's complicated pneumoconiosis, are you conceding that they should win? If there's a finding of complicated pneumoconiosis, that is what the statute provides, yes. A complicated pneumoconiosis is a series of findings that indicates such a severe and inevitably terminable... Well, how is the statute misapplied in this case? How is it applied? Misapplied. Misapplied. I believe because the court of review simply took a look at men in 932L and said, well, there's no need for her to file a new client. It's simply a continuation of benefits. And the benefits were simply from pneumoconiosis. Pardon me? I'm sorry. Simply from simple pneumoconiosis. In this particular case, the scene did not have complicated pneumoconiosis. They had proven he was totally disabled as a result of pneumoconiosis. He was totally disabled. The statute was construed that in view of that total disability, without any showing of the complicated type, she recovers. Regardless of the actual facts. Well, if the decedent had been collecting total disability benefits at the time of death, that does not automatically entitle the survivor to a continuation of benefits unless there's evidence that the death itself was precipitated by pneumoconiosis. Now, when you're using the term rebuttable presumption, aren't you really saying that this is simply the law? And one way to put it is rebuttable presumption. For example, take in New Jersey the driving under the influence law. You could make a presumption that if you have a certain level of drug alcohol that you're under the influence. That was always the law. But the legislature came along and said that if you have a certain level that is being under the influence, and you could call that a rebuttable presumption, or you could also say that's simply the substantive law. I mean, you can write it. Isn't it just a question of how it's written? I think to some extent, the way that 932L is written, the way the director is interpreting it, it's a rebuttable presumption that if the minor is receiving benefits at the time of death, then automatically it's presumed that death was due to pneumoconiosis. And that's where we take issue and say that they're getting... If they wrote it this way, without characterizing it as a rebuttable presumption, if they simply said if the minor was receiving these benefits and the survivor is entitled to the benefits too, regardless of the actual situation, and without using the word presumption, that gets you to the same place. But what it does is it eliminates the concept of presumption. It just says under what circumstances. Now I understand that that undercuts the theory of the statute to a degree. I understand that. Nevertheless, the Congress can undercut the theory of the statute if it wants in particular cases. I thought that's all they're really doing. It can, in this case not constitutionally, the situation where a survivor is entitled to receive benefits without even having to prove that the minor deceased died of pneumoconiosis does not further the purpose of the act. Why not? The purpose of the act appears to be to be a very valuable and substantial benefit to the surviving spouse of a minor. That's just a policy decision Congress made. And just like in 1981, the corporate side of things had a legislative victory. Last 2010, the minor side had a legislative victory. Well, I think it does not serve the purpose of the act because in 901A the purpose is set forth and specifically says that its purpose is to benefit minors who are totally disabled due to pneumoconiosis. He was disabled. That's not in dispute here. What's in dispute is cause of death. And then Congress made a policy decision to say we don't care if you get hit by a bus. It doesn't matter. We want to give your spouse a continuing stream of benefits until her or his demise. Isn't the whole issue foreclosed by the Turner-Elkhorn decision? The Supreme Court, I mean, they had an irrebuttable presumption. It was a 411C3. I don't believe so, Your Honor. And that was with those benefits, right? Yes, it did. But Turner-Elkhorn was decided in 1976 before 932L was even in the act. But they said that an irrebuttable presumption, you didn't have to show cause of death. That's fine, because we can view that as Congress saying essentially that's a payment for deferred compensation for the suffering that the survivors had to go through while they watched their loved one. That's with this disabled disease. And Turner-Elkhorn was decided in 1976 before all of the evidence came out about how so many, so many vet clinics were being awarded without medical evidence, adequate medical evidence in the case of survivors. There wasn't any evidence at all. And I think, just to get back to the purpose of the act, the purpose of the act is not only to compensate the minors who suffered due to pneumoconiosis, but also just to survivors whose deceased have died as a result of pneumoconiosis, not as a result of a heart attack or an automobile accident or whatnot. It's important to tie the two together. And I think if you look at the entire legislative scheme, 932C, 922A, it's clear that unless you have that causal connection between death and pneumoconiosis, you're not an eligible survivor under 932L. Isn't the whole... I remember years ago I had a law clerk come in outraged because he went over a black lung case and he said to me, they have all these different presumptions that seem to be counter to what the actual facts are. And he got very, very upset. I said, don't get upset. You'll still get your check. So, you know what I mean? The physicians are getting upset about it. But I said, I think that may very well be true. But this is a policy. These are policy determinations that are made. We're only judges. Absolutely. This is a policy decision. If it was a policy decision, if you look at the sessions that they did in 2010 and the ones that they didn't, it just simply doesn't make sense. So it seems more likely it was a scrivener's error. I wouldn't say a scrivener's error. But if the intent here, though, was to give a substantial benefit to the surviving spouses, they should have yanked out that qualifying language from 922A, but they didn't. Exactly. Doesn't that seem inconsistent with the purpose of why they passed the act in the first place? I don't think so. Because, again, the purpose is to compensate with respect to the survivors. Survivors of minors who died of pneumoconiosis and survivors who had pneumoconiosis and then died. There has to be a causal connection with respect to death. So I don't think it's contrary. All right. We'll get you back out of the bubble. Thank you. Ms. Hurley? May it please the Court, my name is Sarah Hurley and I represent the Director, Office of Workers' Compensation for the United States Department of Labor. The Court requested that we address what effect the entitlement provisions of Section 932C, which incorporates, by reference, Sections 922A, payment of benefits schedule, has on the meaning of eligible survivors, is used in 932L. Well, our answer, the short answer is that it has no effect to the extent that amended Section 932L conflicts with any other provisions of the Brockmont Benefits Act. The latest amendment, as the latest pronouncement of Congress, repeals by implication all contrary provisions of the Brockmont Benefits Act. Where is the conflict? 932L waives filing requirements for eligible survivors. Correct. That's correct. And where do we find the definition of eligible survivors? The definition of eligible survivors, it's not the plan per se, but the way that provision has always been traditionally assumed to operate, it's assumed to operate to provide derivative survivor's benefits to eligible survivors. That's the way it's always been interpreted. Right. We know eligible survivors get the benefits, but I'm asking the threshold question. How do we determine who an eligible survivor is? Well, we look to the definition of eligible survivor which satisfies the relationship dependency. And then we would also then go to the act. Don't we look at 932C, which refers us to 922A? Right. That's exactly where we're on. And 922A, for reasons that puzzle me, continues to contain the language except with respect to a claim filed under Part C of this subchapter on or after the effective date of the black loan benefits amendments of 1981. That's true. Is that language supposed to be in there? I believe that Congress should have, the director believes that Congress should have taken that language out. So you're arguing scrivener's error? We are. And what evidence in the legislative history demonstrates that this is a scrivener's error? Senator Bird's comments on the floor or was it in a report? Where did we find that? Two days later on the floor. Two days after what? After the amendment to the Black Loan Benefits Act was passed by the Patient Protection and Affordable Care Act.  So the evidence that this is a scrivener's error is a statement made on the floor of Congress by one senator two days after the law was passed. Yes, Your Honor, but he was also a sponsor of this provision. So his comments do carry some weight. And one person's opinion on a law binds the other hundred senators? It also binds the House of Representatives and the President who signed the law into effect? That would also, if this was not the intention of this provision. Before you go there, does one senator's statement after the law is passed, even before the law is passed, does one senator's statement bind the other senators, the House, and the President who signed the act into law? Well, as the sponsor, his comments do have some weight, Your Honor. And isn't it clear that the language that was taken from 932L was intended to put the law as it existed back in 1978? Yes, Your Honor, it was. Where in the legislative record do you cite that? There's nothing in the legislative record, but if you look at it, the amendment would have no effect if it wasn't meant to do that. Sure, it would have an effect. You just don't get the benefits by not having to refile. The surviving spouse has to refile and ensure that the death was caused by pneumoconiosis rather than a car accident or something else entirely unrelated to pneumoconiosis? Well, Your Honor, the vision of the act which does this is entitled Continuation of Benefits, and I believe that title does indicate that Congress intended that the survivors were to continue to receive the benefits. That does give us some supporting argument here. Well, you do get the continuation of benefits. I mean, the first section of 922A says in the case of death of a minor due to pneumoconiosis. So that person does get the continuation of benefits. Yes, but let me see here. Section 132L was put into the act to ease the path and to provide these survivors with derivative benefits, and the fact that Congress removed that language from section 132L indicates that Congress was going back to the original intention of that provision. What exact language was removed from 932L? The limiting language except the limiting language as set forth in section 1556, the exception with respect to the claim, filed after the effective date of the Black Home Benefits Act of 1981. So that was removed. But they didn't take it out of I mean, I guess what I'm struggling with is I have a sneaky suspicion that this was a mistake by Congress. That's my position too, Your Honor. That you share my sneaky suspicion that this was an error. It was an error. All right, but let's stipulate it was an error then. What's challenging, speaking only for myself, in agreeing with your position, is that the Supreme Court has told us time and again to interpret the laws based upon the words contained therein and not on the kinds of sneaky suspicions or suppositions that I'm adverting to here. On the other hand, the Supreme Court has said that when there's a scrivener's error, or when the statute would lead to an absurd result, we can ignore the plain language of the statute and reach a decision that would appear to be contrary to the plain language of the statute. What can you show us that would satisfy that difficult threshold to really give us supreme confidence, the kind of indubitable proof that an absurdity or a scrivener's error would indicate in this case? Well, in the act, if we don't consider a scrivener's error, there's an irreconcilable conflict within the act, the provisions of the act. We have some provisions of the act say that a survivor is not entitled to benefits unless they prove that the death of the woman was due to pneumoconiosis. Here, in the derivative of survivor's benefits, that, that, get back, a survivor had, for the crimes filed after 1982, a survivor had to prove death due to pneumoconiosis to get benefits. Derivative of survivor's entitlement, which is brought back by this session of the Health Care Act, would provide derivative entitlement for survivors after, to file after 2005. So there's an irreconcilable conflict there. If, you can't have the act saying that survivors who file after 1982 are only entitled if their, to prove death due to pneumoconiosis, whereas this provision provides that a survivor will continue to get benefits in the crime filed after 2005 just because the woman was getting benefits at the time. So that's the same kind of, that's the same kind of policy judgment that your brief, I think, quite devastatingly persuades against their argument that this whole thing is unconstitutional. I mean, that's just a policy judgment. People who fall into the minors 2005 category get treated better than the people in the 1981 to 2005 category. And the minors in the pre-1981 category get treated better than those in the middle. That's true. Why is that? I mean, that's just a difference in policy. That's not an irreconcilable difference in the statute, is it? No, but the visions of the, of the act which address the situation conflict, then. Well, Judge Hardaway's point is they don't conflict if you're applying them to different groups of people. That's all. Unless I misunderstand him. In other words, if you had, for a particular individual, two sections that are pointed in opposite directions, now you have a conflict. And, obviously, one or the other cannot be able to understand that. What he's saying is that's not necessarily true, because you can read the whole thing as simply dividing different approaches depending upon dates. That's all. Are you saying, well, that wouldn't make much sense? Well, I don't think that would  sense. I don't   would  sense. But the way it was defined was that it would be one approach per person. It was one approach per person. And the way  was  was that it would be one approach per person. And the way it was